**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-2519-LTB-GPG

CITIZENS FOR A HEALTHY COMMUNITY;
HIGH COUNTRY CONSERVATION ADVOCATES;
CENTER FOR BIOLOGICAL DIVERSITY;
WILDEARTH GUARDIANS, and
WILDERNESS WORKSHOP;

    Petitioners,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the U. S. Department of Interior;
RYAN ZINKE, in his official capacity as U.S. Secretary of the Interior;
DANA M. WILSON, in her official capacity as Acting Southwest District Manager;
UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture;
SONNY PERDUE, in his official capacity as U.S. Secretary of Agriculture; and
SCOTT G. ARMENTROUT, in his official capacity as Forest Supervisor;

    Federal Defendants,

    and

SG INTERESTS VII. LTD., and
SG INTERESTS I, LTD.,

    Defendant-Intervenors.

___

**PETITIONERS' BRIEF ON REMEDY**
___

On March 27, 2019, this Court held that Federal Defendants Bureau of Land

Management ("BLM") and United States Forest Service ("USFS") violated the National

Environmental Policy Act ("NEPA") by failing to take a hard look at the reasonably foreseeable

1

indirect impacts of oil and gas extraction and sufficiently explain their cumulative impacts analysis of these oil and gas operations on mule deer and elk. ECF 53 at 38. The Court directed the parties to confer and attempt to reach an agreement on remedies. *Id.* at 39. Despite their best efforts, the parties were unable to reach such an agreement. Petitioners submit this brief respectfully asking that the Court grant the presumptive Administrative Record Act ("APA") remedy of vacatur and remand, and to direct that Defendants conduct a Supplemental Environmental Impact Statement ("SEIS") if they are to cure their NEPA violations.

### I. VACATUR IS THE PRESUMPTIVE LEGAL REMEDY FOR APA VIOLATIONS.

Where federal agencies' actions fail to comply with NEPA, vacatur is the normal remedy. *High Country Conservation Advocates v. U.S. Forest Serv.*, 67 F. Supp. 3d 1262, 1263 (D. Colo. 2014) (citing 5 U.S.C. § 706(2)(A)) ("*HCCA II*"); *Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 859 (10th Cir. 2019) ("*Diné C.A.R.E. I*"). Under the APA, the reviewing court "shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573 (10th Cir. 1994). "'Shall' means shall" under the APA. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999). "Set aside" means to "annul or vacate." *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (quoting Black's Law Dictionary (8th ed. 2004)).

In a recent case also involving BLM's approval of hundreds of oil and gas drilling permits, the Tenth Circuit vacated BLM's authorization of applications for permits to drill ("APDs") due to the agency's failure to take a hard look at cumulative impacts under NEPA, and in so doing, set out the controlling framework for analyzing NEPA remedies in this circuit. *Diné*

2

*C.A.R.E. I*, 923 F.3d at 859. Quoting the Supreme Court's *Monsanto* decision, the Tenth Circuit explained that courts need not analyze permanent injunction factors where vacatur of the agency decision provides NEPA plaintiffs with sufficient relief. As the Court explained, "[b]ecause vacatur is 'sufficient to redress [Appellants'] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted.'" *Diné C.A.R.E. I*, 923 F.3d at 859 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010)); *accord HCCA II*, 67 F. Supp. 3d at 1263 n.1 (distinguishing *Monsanto* and analysis of injunction factors and stating that "vacating each offending action and remanding to the agency for further proceedings" is a "narrow remedy" that does not require analysis of injunction factors).

Although reviewing courts also maintain traditional equitable powers and have discretion to craft an alternate remedy, this is only done in unusual and limited circumstances. *HCCA II*, 67 F. Supp. 3d at 1263-64; *W. Oil & Gas v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (fashioning alternative remedy where vacatur would thwart the objective of the statute at issue); *WildEarth Guardians v. Jewell*, 870 F.3d 1222, 1239–40 (10th Cir. 2017) (remanding to the district court to allow the parties to make equitable arguments and explaining that, in this unusual circumstance, a tailored remedy could be appropriate for three of the four challenged leases where some degree of mining had already occurred). In general, remedies other than vacatur are used where vacatur would thwart the objective of the law at issue or would cause unacceptable harm to the environment or public health.[1] And although some circuits employ a two-step test weighing

---

[1] *See, e.g., Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1265 (D.C. Cir. 2007) (Rogers, J., concurring in part and dissenting in part) ("[T]he court has traditionally not vacated the rule if doing so would have serious adverse implications for public health and the environment"); *Idaho Farm Bureau*, 58 F.3d 1392, 1405-06 (9th Cir. 1995) (retaining Endangered Species Act listing decision during remand to avoid the species' potential extinction).

equity against vacatur, the Tenth Circuit has not adopted this test. *HCCA II*, 67 F. Supp. 3d at 1263-64; *see, e.g., Diné C.A.R.E. I*, 923 F.3d at 859.[2] Thus, courts have held that vacatur is the "presumptively appropriate remedy for a violation of the APA," and the "default" remedy. *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d at 78 (vacatur is "presumptively appropriate remedy"); *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) (vacatur is "default" remedy).

Here, vacatur would not thwart the objectives of NEPA or cause unacceptable harm to the environment or public health. On the contrary, vacatur is necessary to fulfill NEPA's environmentally-protective purpose of requiring agencies to conduct analysis before committing resources. *See* 42 U.S.C. § 4332(2)(C)(v) (NEPA requires assessment of all reasonably foreseeable impacts before an irreversible and irretrievable resource commitment takes place); *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 718 (10th Cir. 2009) (approval for oil and gas extraction as soon as the lease sale stage constitutes an irretrievable resource commitment). There are also none of the unusual or limited circumstances present that lead courts to craft an alternative remedy. First, unlike in *Colorado Environmental Coalition v. Office of Legacy Management*, 819 F. Supp. 2d 1193, 1217 (D. Colo. 2011) *amended by* 2012 WL 628547 (D. Colo. 2012), where the court left a flawed programmatic planning document in place because plaintiffs had failed to demonstrate why the decision without further review was arbitrary and capricious, Petitioners have made—and the Court has accepted—this arbitrary and capricious showing. *See* ECF 53 at 38. Second, vacatur will not result in severe delay or

---

[2] *See*, *e.g.*, *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (weighing seriousness of legal violation and disruption vacatur might cause).  As shown herein, even if this Court applies the test used in *Allied-Signal*, vacatur is still appropriate because the NEPA violations are serious, and vacatur would cause minimal disruption.

trouble—whether in the form of pollution, public health risks, economic impacts, or even legislative predicaments. *See, e.g., Cal. Cmtys. Against Toxics v. United States EPA*, 688 F.3d 989, 993-94 (9th Cir. 2012) (citing pollution, serious economic impacts, likely necessity of a new bill from California legislature, as reasons the court remanded without vacatur); *see also supra note* 1. Instead, vacatur will prevent activities from occurring that will have serious negative impacts (pollution, habitat fragmentation) until the agencies have complied with the law. And, with the majority of the underlying leases suspended earlier this year due to the Court's ruling, there is no valid argument that vacatur would result in serious economic hardship. Exhibit 1. Indeed, this is not the case, as it was in *WildEarth Guardians v. U.S. Office of Surface Mining, Reclamation & Enforcement*, 104 F. Supp. 3d 1208, 1231-32 (D. Colo. 2015), where vacatur would result in hundreds of lay-offs because operation and production were in full swing. Simply put, there is no severe delay or trouble that will result from ensuring the agencies cure their NEPA errors on the clean slate that vacatur provides.

## II.    DEFENDANTS' ENVIRONMENTAL ANALYSES AND FINAL AGENCY DECISIONS SHOULD BE VACATED AND REMANDED.

Here, vacatur and remand, and direction to BLM to conduct an SEIS is the only remedy that serves NEPA's fundamental purpose of requiring agencies to look *before* they leap, and the only one that avoids a "bureaucratic steam roller" that would press forward regardless of impacts. *Davis v. Mineta*, 302 F.3d 1104, 1115 (10th Cir. 2002) *abrogated on other grounds by Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Environmental analysis "aims to ensure 'that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts' and guarantees 'that the relevant information will be made available to the larger

audience that may also play a role in both the decisionmaking process and the implementation of that decision." ECF 53 at 4 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989)). Indeed, "Congress enacted NEPA to ensure that all federal agencies consider the environmental impacts of their actions to prevent or eliminate damage to the environment. *Id.* at 3; 42 U.S.C. § 4331; *Marsh v. Or. Natural Resources Council*, 490 U.S. 360, 371 (1989); *Sierra Club v. Hodel*, 848 F.2d 1068, 1088 (10th Cir. 1988). NEPA "'ensures that the agency will inform the public that it has indeed considered environmental concerns in its decision-making process.'" *Sierra Club v. United States DOE*, 255 F. Supp. 2d 1177, 1182 (D. Colo. 2002).

Here, the agencies' analysis did not meet these foundational NEPA aims regarding indirect emissions of oil and gas combustion, as well as cumulative impacts on elk and mule deer. ECF 53 at 16, 36, 37. There would be no hardship to Defendants from the Court granting Petitioners' request of vacatur. Indeed, such an order from the Court is necessary to ensure Petitioners' legal rights are protected and that the aims of NEPA are realized. Accordingly, Petitioners respectfully request vacatur and remand of: (1) Defendant BLM's approval of the Bull Mountain Master Development Plan and the related Record of Decision ("EIS/ROD"); (2) Defendant United States Forest Service's approval of 25-natural gas wells, well pads, and related infrastructure and related Decision Record ("EA/DR"); and (3) both Defendants' approval of related applications for permits to drill; with additional direction to Federal Defendants to conduct an SEIS, so that the NEPA violations identified by this Court may be cured.

    A. <u>The Appropriate Remedy for Defendants' Failure to Analyze Indirect Impacts of Downstream Emissions is Vacatur and Remand of the EIS/ROD and EA/DR.</u>

The nation's environmental policies are given meaning through a set of procedural requirements that agencies are duty-bound to comply with *before* acting. *N.M. ex rel. Richardson*

*v. BLM*, 565 F.3d at 703 ("NEPA requires federal agencies to pause before committing resources to a project and consider the likely environmental impacts of the preferred course of action as well as reasonable alternatives."). Vacatur and remand together best foster NEPA's goal of informed decisionmaking as they provide a clean slate for decisions without substituting the Court's judgment for that of the agencies. *HCCA II*, 67 F. Supp. 3d at 1265 ("[W]hile it is not the Court's responsibility to mandate a particular outcome, NEPA's goals of deliberative, non-arbitrary decision-making would seem best served by the agencies approaching these actions with a clean slate.").

Here, the Court found that "Defendants acted in an arbitrary and capricious manner and violated NEPA by not taking a hard look at the foreseeable indirect effects resulting from the combustion of oil and gas in the EIS and EA." ECF 53 at 18. The Court then stated that the agencies must "quantify and reanalyze the foreseeable indirect effects." *Id*. Vacating the EIS/ROD and EA/DR, and remanding to the agencies, is critical to ensure Defendants comply with the law and this Courts' direction. The agencies' subsequent analysis should not be a pro forma exercise in support of a "predetermined outcome," and vacatur best ensures that will indeed not be the case. *Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006); *accord Diné CARE v. OSM*, No. 12-cv-1275-JLK, 2015 WL 1593995, at *3 (D. Colo. Apr. 6, 2015) (vacating approval of mining operations in mine expansion area to assure NEPA compliance on remand would not become "a mere bureaucratic formality.") ("*Dine CARE v. OSM*"), *abrogated on other grounds by Dine Citizens Against Ruining Our Env't v. United States Office of Surface Mining Reclamation & Enforcement*, 643 Fed. Appx. 799, 800 (10th Cir. 2016); *Mont. Envtl. Info. Ctr. v. U.S. Office of Surface Mining*, No. CV 15–106–M–DWM, 2017

WL 5047901, at *6 (D. Mont. Nov. 3, 2017) (vacatur appropriate because "error lies at the heart of NEPA's requirement that agencies make informed decisions"); 40 C.F.R. § 1506.1.

It is also possible that the agencies' analysis of the reasonably foreseeable indirect emissions impacts could lead to a different result, including the possibility that such analysis would shape the agencies fundamental decisionmaking and result in additional conditions on approval or limitations on drilling and location. *See HCCA II*, 67 F. Supp. 3d at 1265 ("I am also not sure that the agency's decision on remand is a foregone conclusion. The agencies might, depending on how they calculate the effect of greenhouse gas emissions, decide to forgo granting the lease modifications altogether. Then again, maybe they will reach the same conclusion they reached before this appeal.").

Another essential part of NEPA that vacatur and remand best serves are the requirements of public participation. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1094 (10th Cir. 1988) (citing 40 C.F.R. §§ 1503.1(a)(4), 1506.6) ("The preparation of an EIS . . . entails . . . public and interagency participation. . . . This cross-pollinization of views could not occur within the enclosed environs of a courtroom."). Here, because the agencies did "not tak[e] a hard look at the foreseeable indirect effects resulting from the combustion of oil and gas in the EIS and EA," the public has never had an opportunity to analyze and comment on these impacts. ECF 53 at 18. In the absence of such relief, the decisionmaking process would be made devoid of public input on these impacts. Any meaningful evaluation of the agencies' NEPA failures would be eviscerated if activities could continue while Defendants prepare the legally required analyses, or if Defendants' ultimate decisions remain intact.

Defendants and Intervenor-Defendants may argue for a different result, but there is no reason to depart from the presumptive remedy of vacatur, particularly because vacatur serves NEPA's fundamental purpose of requiring agencies to look *before* they leap.[3] Moreover, the agencies' failure to analyze indirect downstream emissions goes to the heart of the agencies' impacts analysis, further supporting vacatur. *See Nat'l Ski Areas Ass'n v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1286 (D. Colo. 2012) (defendants' "significant violations of the APA . . . cut heavily" in favor of vacatur). And where, as here, the Court found that Defendants have not complied with the mandates of NEPA in the first instance for both the EIS/ROD and EA/DR, the proper form of analysis is dictated by NEPA and is not something that the agency can opaquely concoct as it sees fit.

Defendants may also suggest that the NEPA errors will be easily fixed and the same decisions made again—but such predetermination should not weigh against vacatur. First, vacating the challenged agency actions best aligns with one of the fundamental purposes of NEPA, which "is not to generate paperwork—even excellent paperwork—but to *foster excellent action*." 40 C.F.R. § 1500.1(c) (emphasis added). Second, as other courts have pointed out, an agency's "apparent position that it is merely a matter of time before they reinstate the same deregulation decision, or a modified version of this decision, and thus apparent perception that conducting the requisite comprehensive review is a mere formality, causes some concern that [d]efendants are not taking this process seriously." *See Ctr. for Food Safety*, 734 F. Supp. 2d at

---

[3] *See*, *e.g.*, *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) (concluding "[t]he fact that the Court has already found that [the agency] failed to fully consider the potential consequences of [its decision] and that Plaintiffs have shown that [the decision] may significantly affect the environment demonstrates that [the agency's] errors are not minor").

953. Curing NEPA errors is not a mere bureaucratic formality—it is a vindication of violated public rights that are essential to reasoned agency decisionmaking. As Judge Kane noted when vacating and remanding agency analysis and approval of coal leases in *Dine CARE v. OSM*:

> I am mindful of NEPA's purpose of ensuring that federal agencies meaningfully consider the potential environmental impacts of a proposed action *before* undertaking that action. Remand alone will not fulfill NEPA's purpose.  Absent some limitation on [the mining company's] ability to continue its operations while OSM corrects its NEPA violation, OSM's compliance with NEPA could become a mere bureaucratic formality.

2015 WL 1593995, at *3 (D. Colo. Apr. 6, 2015).

Congress designed NEPA to ensure that "important effects will not be overlooked or underestimated only to be discovered *after* resources have been committed or the die otherwise cast." *Robertson*, 490 U.S. at 349 (emphasis added). Indeed,

> NEPA procedures must insure that environmental information is available to public officials and citizens *before* decisions are made and *before* actions are taken.  The information must be of high quality.  Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA.

40 C.F.R. § 1500.1(b) (emphasis added). Environmental analyses must "not be used to rationalize or justify decisions already made." 40 C.F.R. § 1502.5.[4]

Here, vacating the agencies' EIS/ROD and EA/DR ensures that the outcome is not pre-ordained, best serving NEPA's goals of deliberative, non-arbitrary decisionmaking.

---

[4] *See also Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1998) (vacating agency decision because of NEPA violation rather than entering injunction because "[w]here contracts have already been entered into, the opportunity to 'choose' [among alternatives] has been eliminated . . . .  Therefore, an injunction would not serve any purpose if the contracts are not invalidated.").

  B. <u>The Appropriate Remedy for Defendants' Failure to Sufficiently Explain Cumulative Impacts to Mule Deer and Elk is Vacatur and Remand of the EIS/ROD.</u>

In addition to failing to analyze and disclose indirect impacts of downstream emissions, Defendants "do not sufficiently explain the scope of cumulative impacts regarding mule deer and elk" in the EIS. ECF 53 at 37. The Court directed that Defendants "must clarify the area it used when it analyzed the Unit MDP's cumulative impacts on mule deer and elk in the EIS." ECF 53 at 37. The void of information in the record regarding the scope Defendants relied upon for determining cumulative impacts on mule deer and elk is not a *de minimis* shortfall. Rather, it goes directly to "NEPA's 'twin aims' of informed agency decisionmaking and public access to information." *Richardson*, 565 F.3d at 707. Defining the scope of analysis is the first step for understanding impacts. Just as a doctor would not go into surgery without understanding the extent and type of procedure, Defendants cannot analyze impacts to species—much less properly disclose those impacts to the public—without first establishing the scope of such analysis. Vacating and remanding, with direction to conduct a SEIS, is the proper remedy to cure this error.

  Defendants may argue that it is enough for them to provide *post hoc* rationales as to the scope of the cumulative impact analysis area for these two species. But NEPA and the APA require more. The agency record must demonstrate that the agencies followed the NEPA procedures and, here, there is no such evidence because Defendants have not "sufficiently explain[ed] the scope for cumulative impacts regarding mule deer and elk." ECF 53 at 7, 37. Defendants' failure to comply with NEPA deprived Petitioners, the public, and Colorado Parks and Wildlife of their procedural rights to comment on the scope for cumulative impacts analysis for mule deer and elk. As such, Petitioners respectfully request that this Court's remedy order

safeguard against the agency conveniently using litigation positions to clarify that the analysis' scope was, despite the lack of record evidence, somehow broader than the Unit itself. *See id.* at 37. Similarly to Defendants' other NEPA violation, there is no reason for the Court to depart from the presumptive remedy of vacatur. And, as detailed above, this remedy is not only appropriate, but best ensures Defendants will comply with the requirements of NEPA.

    C.  <u>The Applications for Permit to Drill Should be Vacated.</u>

The APDs approved and associated with the EIS/ROD and EA/DR were based on NEPA documentation found to be unlawful. *See* ECF 53 at 8-9. NEPA regulations specify that a subsequent decision relying on a broader EIS "must include a finding that the conditions and environmental effects described in the broader NEPA document are still valid or address any exceptions." 43 C.F.R. § 46.140; *see also S. Fork Band Council of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 588 F.3d 718, 726 (9th Cir. 2009) ("Though 'tiering' to a previous EIS is sometimes permissible, the previous document must actually discuss the impacts of the project at issue."). Here, the subject APD approvals are explicitly dependent upon earlier analysis found to be unlawful. Leaving the APDs intact—or, for that matter, the underlying EIS/ROD and EA/DR—while the agencies attempt to cure the NEPA violations is akin to reaching the verdict before the trial. Just as the Tenth Circuit required in *Diné C.A.R.E. I*, 923 F.3d at 859, this Court should vacate the APDs that are based on the unlawful EIS/ROD and EA/DR.

## III.    CONCLUSION

Defendants have failed to comply with NEPA's mandate to "ensure that the agency has adequately considered and disclosed the environmental impact of its actions." *Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transportation*,

843 F.3d 886, 902 (10th Cir. 2016) (quoting *Wyo. v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1256–57 (10th Cir. 2011)). Vacatur and remand of the EIS/ROD and EA/DR, with direction to prepare an SEIS, are the only remedies that will ensure NEPA's mandate is realized and that the agencies take a "hard look" at indirect impacts from greenhouse gas emissions as well as cumulative impacts to elk and mule deer. There exists no compelling reason for this Court to depart from this presumptive remedy. Accordingly, Petitioners respectfully request the Court grant their request for relief.

Respectfully submitted this 20th day of September 2019,

>*/s/ Allison N. Melton*
>Allison N. Melton, CO Bar No. 45088
>Center for Biological Diversity
>P.O. Box 3024
>Crested Butte, CO  81224
>(970) 309-2008
>amelton@biologicaldiversity.org
>
>*Counsel for Center for Biological Diversity*
>
>*/s/ Laura King*
>Laura King, MT Bar No. 13574
>Western Environmental Law Center
>103 Reeder's Alley
>Helena, MT  59601
>(406) 204-4852
>king@westernlaw.org
>
>Kyle J. Tisdel, CO Bar No. 42098
>Western Environmental Law Center
>208 Paseo del Pueblo Sur, #602
>Taos, New Mexico  87571
>(575) 613-8050
>tisdel@westernlaw.org

*Counsel for Citizens for a Healthy Community, High Country Conservation Advocates, Center for Biological Diversity, WildEarth Guardians, and Wilderness Workshop*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE AND
CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

I hereby certify that on September 20, 2019, I electronically filed the foregoing PETITIONERS' BRIEF ON REMEDY with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to other participants in this case.

This brief contains 3,995 words, including everything from the caption to the certificate of service, in compliance with the Court's March 27, 2019 and August 12, 2019 Orders (ECF 53, ECF 67).

/s/ Laura King
Western Environmental Law Center
*Counsel for Petitioners*