IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 17-cv-02519-LTB-GPG

CITIZENS FOR A HEALTHY COMMUNITY;
HIGH COUNTRY CONSERVATION ADVOCATES;
CENTER FOR BIOLOGICAL DIVERSITY;
WILDEARTH GUARDIANS; and
WILDERNESS WORKSHOP,

    Plaintiffs,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, an agency of the U.S. Department of the Interior;
RYAN ZINKE, in his official capacity as U.S. Secretary of the Interior;
DANA M. WILSON, in her official capacity as Acting Southwest District Manager;
UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture;
SONNY PERDUE, in his official capacity as U.S. Secretary of Agriculture; and
SCOTT G. ARMENTROUT, in his official capacity as Forest Supervisor,

    Defendants,

and

SG INTEREST I, LTD., and
SG INTERESTS VII, LTD.,

    Intervenor-Defendants.

___

Order
___

    In my Memorandum Opinion and Order dated March 26, 2019 [Doc # 53] ("the Order"), I concluded that Defendants failed to comply with the National Environmental Policy Act ("NEPA") (1) by not taking a hard look at the reasonably foreseeable indirect impacts of oil and gas and (2) by not taking a hard look at the cumulative impacts on mule deer and elk. With respect to the latter, I ordered Defendants to clarify the area used in analyzing the Bull Mountain Unit (the "Unit") master development plan's (MPD) cumulative impacts on mule deer and elk

in the Environmental Impact Statement ("EIS") and, if only the Unit itself was used, to reconsider that decision and provide sufficient explanation or expand the area of analysis. I further ordered the parties to attempt to reach an agreement regarding remedies as to the issues not in compliance with NEPA or to submit briefs if no agreement could be reached. No agreement was reached, and this case is now before me on the parties' briefing on remedies.

## I. Remedies under NEPA

Because there is no private right of action under NEPA, review in this case is governed by the Administrative Procedure Act (APA). *Utah Envtl. Cong. v. Bosworth,* 443 F.3d 732, 739 (10th Cir. 2006). "Vacatur of agency action is a common and often appropriate form of injunctive relief granted by district courts." *Wildearth Guardians v. U.S. Buereau of Land Mgmt.,* 870 F.3d 1222, 1239 (10th Cir. 2017). Courts have discretion, however, to craft other remedies for violations of the APA, *Johnson v. U.S. Office of Personnel Mgmt.,* 783 F.3d 655, 663 (7th Cir. 2015), and vacatur may not be appropriate in all cases, *N.M. Health Connections v. U.S. Dep't of Health & Human Servs.,* 340 F. Supp. 3d 1112, 1176 (D.N.M. 2018). *See also Black Warrior Riverkeeper, Inc. v. U.S. Army Corps. Eng'rs,* 781 F.3d 1271, 1290 (11th Cir. 2015) (holding that court had discretion under the APA to remand without vacatur and citing cases from several other circuits that had reached the same conclusion).

Though it has declined to vacate agency action in some cases, *see e.g.WildEarth Guardians,* 870 F.3d at 1239-40, the Tenth Circuit has not established a specific test for determining when remedies other than vacatur are warranted.  Other courts have employed a two-step test that weighs "the seriousness of the [agency action's] deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim

change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Com'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993).

## II. Analysis

### A. Remedy Relating to Cumulative Impacts on Mule Deer and Elk

Consistent with my March 26, 2019 Order, Defendants cite to the existing record to demonstrate that the area used in analyzing the Unit MPD's cumulative impacts on mule deer and elk extended ten-miles beyond the Unit's boundaries in all directions. Having reviewed the Defendants' citations and accompanying explanation, I am satisfied that the area used in analyzing the Unit MPD's cumulative impacts on mule deer and elk did in fact extend well beyond the Unit's boundaries with respect to both other significant activities that could impact these wildlife populations and the relevant habitat areas. That being the case, the Order shall be amended to reflect that Defendants did not violate NEPA by failing to take a hard look at the Unit MPD's cumulative impact on mule deer and elk, and no remedy is warranted to address this issue.

### B. Remedy Related to Failure to Analyze Reasonably Foreseeable Indirect Impacts of Oil and Gas

In the Order, I concluded that Defendants failed to comply with NEPA by not taking a hard look at the reasonably foreseeable indirect impacts resulting from the combustion of oil and gas and therefore must quantify and re-analyze these impacts. Defendants have now quantified the estimated greenhouse gas emissions based on the expected production from the wells in the Unit's MDP and from the 5-Pad/25-Well Project and provided their calculations to the Court.

Defendants and Intervenor-Defendants argue that the appropriate remedy for this NEPA violation is to remand the case for further analysis of the newly provided data via agency determined procedures while Plaintiffs argue that the appropriate remedy is vacatur to avoid a preordained outcome. I conclude that

while vacatur is a common remedy for NEPA violations, it is not warranted under the facts and circumstances of this case.

In light of the foregoing conclusion that Defendants did not violate NEPA in analyzing the Unit MPD's cumulative impact on mule deer and elk, Defendants prevailed on all but one of the eight issues raised by Plaintiffs in this case. With respect to the single issue of reasonably foreseeable indirect impacts of oil and gas that requires further analysis, Defendants calculations demonstrate that there is "at least a serious possibility that [the Defendant agencies] will be able to substantiate [their] decision[s] on remand." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,* 282 F. Supp. 3d 91, 97 (D.D.C. 2017). *See also Wild Earth Guardians v. Zinke,* 368 F. Supp. 3d 41, 84 (D.D.C. 2019) (vacatur not appropriate remedy where the probability that agency will be able to justify its prior decisions is sufficiently high). Additionally, vacatur would undoubtedly be somewhat disruptive to Intervenor -Defendants who have already spent more than ten years on the approval process for their proposed operations.

I therefore conclude that the appropriate remedy for Defendants' failure to take a hard look at the reasonably foreseeable indirect impacts of oil and gas as required by NEPA is remand to the Defendant agencies for further analysis of this limited issue as they determine appropriate. Mindful of Plaintiffs' legitimate argument that compliance with NEPA should precede all related operations, I further conclude that all approved Applications for Permits to Drill ("APDs") shall be suspended and no other APDs shall be approved pending the completion of this analysis.

### III. Conclusion

As set forth above, IT IS HEREBY ORDERED as follows:

1. Based on additional citations to the record and explanation by Defendants,

the Memorandum Opinion and Order dated March 26, 2019 [Doc # 53] ("the Order") is hereby amended to reflect that Defendant did not fail to comply with NEPA by not taking a hard look at the cumulative impacts on mule deer and elk;

    2.  This case is REMANDED to the Defendant agencies for further analysis of the reasonably foreseeable indirect impacts of oil and gas; and

    3.  Until the Defendant agencies complete their analysis of the reasonably foreseeable indirect impacts of oil and gas, all related APDs that have been approved are SUSPENDED and Defendants are enjoined from issuing any additional related APDs.

Dated: December __10__, 2019 in Denver, Colorado.

                                    BY THE COURT:

                                    s/Lewis T. Babcock
                                    LEWIS T. BABCOCK, JUDGE